UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM M. AMORT,<br><br>    Plaintiff,<br><br>v.<br><br>ECCO RETAIL, LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-05812-DMR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT**<br><br>Re: Dkt. Nos. 8, 11 |

Plaintiff William M. Amort filed this putative wage and hour class action in San Mateo County Superior Court against Defendants ECCO Retail, LLC (ECCO Retail); ECCO USA, Inc. ("ECCO USA"); and ECCO.[1]  [Docket No. 1 (Notice of Removal Ex. A (Compl.)).]  Defendants subsequently removed the case to federal court, invoking the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Plaintiff now moves to remand.  [Docket No. 11.]  Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the complaint.  [Docket No. 8.]  This matter is suitable for resolution without a hearing.  Civ. L.R. 7-1(b).  For the following reasons, the motion to remand is granted.  The motion to dismiss is denied as moot.

## I.   FACTS AND PROCEDURAL BACKGROUND

Plaintiff filed this class action in San Mateo County Superior Court on July 27, 2022, alleging violations of the California Labor Code.  He seeks damages for unpaid compensation, statutory penalties, and injunctive relief, among other forms of relief, on behalf of a putative class of Defendants' current and former non-exempt employees in California.  Plaintiff defines the putative class as follows: "[a]ll California citizens currently or formerly employed by Defendants

---

[1] On November 21, 2022, the parties stipulated to dismiss Defendant ECCO.  [Docket No. 18.]

as non-exempt employees in the State of California at any time between January 23, 2018 . . . and the date of class certification[.]" Compl. ¶ 20.  He also defines a "Waiting Time Subclass" as "[a]ll members of the Class who separated their employment with Defendant at any time between January 23, 2019 and the date of class certification[.]" *Id*. at ¶ 21.

Plaintiff asserts nine claims for relief: (1) failure to pay minimum wage in violation of California Labor Code sections 1194, 1194.2, and 1197; 2) failure to pay overtime in violation of Labor Code sections 510, 1194, and 1198; (3) failure to provide meal periods in violation of Labor Code sections 226.7 and 512; (4) failure to permit rest breaks in violation of Labor Code section 226.7; (5) failure to reimburse for business expenses in violation of Labor Code sections 2800 and 2802; (6) failure to provide accurate and itemized wage statements in violation of Labor Code section 226(a); (7) failure to timely pay wages in violation of Labor Code sections 204 and 210; (8) failure to pay all wages due at termination in violation of Labor Code sections 201, 202, and 203; and (9) violation of California Business and Professions Code sections 17200 *et seq*. *See generally* Compl.

Defendants timely removed the complaint, asserting CAFA jurisdiction.  Notice of Removal ¶¶ 3-22, 27.  In support of removal, Defendant submitted a declaration by Stacy Holtzclaw.  [Docket No. 1-3 (1st Holtzclaw Decl., Oct. 6, 2022).]  Holtzclaw is Defendant ECCO Retail's Human Resources Manager—Retail Division.  *Id*. at ¶ 2.  Holtzclaw made certain assertions about the size of the putative class, the average regular rate of pay for non-exempt employees in California during the relevant time period, and the number of workweeks and pay periods during the relevant time period.  *Id*. at ¶¶ 9-14.  Based on this evidence, Defendants originally estimated that the value of certain class claims is at least $7,001,708.60, which exceeds the $5,000,000 jurisdictional minimum under CAFA.  Notice of Removal ¶ 21.

Plaintiff moves to remand the action, arguing that Defendant has failed to establish that the amount in controversy exceeds the $5,000,000 jurisdictional minimum.  Defendants move pursuant to Rules 12(b)(2) and 12(b)(6) to dismiss the complaint.

The court must address the issue of subject matter jurisdiction before reaching the merits of any 12(b)(6) challenges to the sufficiency of pleading.  *See Steel Co. v. Citizens for a Better*

2

1  *Env't*, 523 U.S. 83, 94-95 (1998). Accordingly, the court must first analyze Plaintiff's motion to
2  remand.

## II. MOTION TO REMAND

### A. Legal Standards

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or other defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.), *opinion amended on denial of reh'g,* 387 F.3d 966 (9th Cir. 2004) (citing 28 U.S.C. § 1447). "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).

In seeking removal under CAFA, the defendant bears the usual burden of establishing federal jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021, 1024 (9th Cir. 2007) (holding that in a CAFA case the removing party bears the burden of establishing federal jurisdiction under 28 U.S.C. § 1332(d)(2)). However, unlike other removed cases, there is "no antiremoval presumption" in CAFA cases. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The removing defendant must file a notice of removal "containing a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), and the notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Ibarra*, 775 F.3d at 1197 (quoting *Dart*, 574 U.S. at 89). Evidentiary submissions are not required. *Id*. (citing *Dart*, 574 U.S. at 89).

If the plaintiff disputes the defendant's assertion of the amount in controversy, a defendant must then show "by a preponderance of evidence that the aggregate amount in controversy exceeds $5 million." *Ibarra*, 775 F.3d at 1197. The preponderance of the evidence standard

1  requires the defendant "to provide evidence establishing that it is more likely than not that the
2  amount in controversy exceeds the jurisdictional amount." *Coleman-Anacleto*, 2016 WL
3  4729302, at *5 (cleaned up) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th
4  Cir. 1996)). The Ninth Circuit has clarified that the preponderance of the evidence standard
5  applies irrespective of the specificity of the plaintiff's allegations regarding the jurisdictional
6  amount in controversy. *See Ibarra*, 774 F.3d at 1197 (the preponderance of evidence standard
7  applies whether the complaint is unclear or ambiguous regarding the jurisdictional amount in
8  controversy, or "affirmatively contend[s] that damages do not exceed $5 million").

9  "Typically, when the plaintiff contests the defendant's amount-in-controversy allegations,
10 both sides submit proof, and the court decides whether the jurisdictional threshold has been met."
11 *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019) (citing *Ibarra*,
12 774 F.3d at 1197). The court may consider "evidence outside the complaint, including affidavits
13 or declarations, or other 'summary-judgment type evidence relevant to the amount in controversy
14 at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins.
15 Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction
16 [under CAFA] by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775
17 F.3d at 1197; *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK,
18 2016 WL 4729302, at *5 (N.D. Cal. Sept. 12, 2016) ("Mere conclusory allegations are
19 insufficient, as are 'speculative and self-serving assumptions.'" (quoting *Garibay v. Archstone
20 Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013))). "CAFA's requirements are to be tested by
21 consideration of real evidence and the reality of what is at stake in the litigation, using reasonable
22 assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

23 Finally, in considering the allegations in the plaintiff's complaint, "[t]he court must assume
24 that the allegations of the complaint are true, and that a jury will return a verdict for the plaintiff
25 on all claims made." *Coleman-Anacleto*, 2016 WL 4729302, at *5; *see also Ibarra*, 775 F.3d at
26 1197. "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint,
27 not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199,
28 1205 (E.D. Cal. 2008) (emphasis omitted).

4

**B.    Discussion**

Plaintiff concedes that CAFA's jurisdictional requirements of minimum diversity and class numerosity are met. The parties dispute whether the complaint satisfies CAFA's requirement that the amount in controversy exceeds $5 million. In their notice of removal, Defendants alleged that the amount in controversy is at least $7,001,708.60, relying on employment data set forth in Holtzclaw's declaration. Notice of Removal ¶ 21. Plaintiff argues that this sum is based on "assumptions that are unsupported by the allegations in the Complaint or the evidence." Mot. 3.

In their opposition papers, Defendants revise their estimated amount in controversy downward to $5,118,971.62. Opp'n 3. This sum is based on Defendants' estimates of unpaid minimum wages and liquidated damages; meal and rest period premiums; damages for inaccurate wage statements; waiting time penalties; and attorneys' fees, as follows:[2]

| | |
|---|---|
| Unpaid Minimum Wages and Liquidated Damages Claim | $716,134.00 |
| Meal Period Claim | $410,673.12 |
| Rest Break Claim | $662,213.88 |
| Inaccurate Wage Statements Claim | $906,150.00 |
| Waiting Time Penalties | $1,400,006.40 |
| Attorneys' Fees | $1,023,794.22 (based on 25% of the amount in controversy) |
| **Total** | **$5,118,971.62** |

Opp'n 14. Defendants support their revised amount in controversy with a second declaration by Holtzclaw in which she provides additional details about the putative class. [Docket No. 15-2 (2d Holtzclaw Decl., Nov. 2, 2022).]

On reply, Plaintiff disputes the assumptions underlying the revised calculations of meal

---

[2] Defendants do not offer estimates for the amounts in controversy corresponding to Plaintiff's claims for unreimbursed business expenses and unfair business practices. *See* Opp'n 14. As it is Defendants' burden to demonstrate the amounts in controversy pertaining to those claims, the court will not consider them in ruling on this motion. *See, e.g., Brown v. Janus of Santa Cruz*, No. 21-CV-00094-BLF, 2021 WL 3413349, at *7 (N.D. Cal. Aug. 5, 2021) (declining to consider potential damages for claims for which defendant offered no argument or calculations); *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *4 (C.D. Cal. Sept. 5, 2019) (same).

and rest period premiums and waiting time penalties, as well as the corresponding calculation of attorneys' fees. *See* Reply 7. Plaintiff does not contest Defendants' estimates regarding unpaid minimum wages and liquidated damages, inaccurate wage statements, and attorneys' fees based on 25% of the actual amount in controversy, but argues that the total amount in controversy is less than the $5,000,000 jurisdictional minimum. *See id*. at 6-7.[3] Accordingly, the court examines whether Defendants have established the amounts in controversy for the meal and rest period premiums and waiting time penalties by a preponderance of the evidence.

### 1.     Meal and Rest Period Premiums

California Labor Code section 226.7 requires that an employer pay an employee "one additional hour of pay at the employee's regular rate of compensation for each workday" that a meal or rest period is not provided. Cal. Lab. Code § 226.7(c). Defendants' updated calculations of the amount in controversy for meal period and rest period violations are $410,673.12 and $662,213.88, respectively, for a total of $1,072,887. Opp'n 3.

Defendants base their meal period violation estimates on the following inputs: 17,732 workweeks during the relevant time period in which putative class members worked at least 18 hours or more per workweek[4], an average regular rate of pay of $15.44 per hour, and a 30% violation rate. Opp'n 6-7 (citing 2d Holtzclaw Decl. ¶¶ 6, 7). Defendants explain that they came up with the 30% estimated violation rate for missed meal periods by blending a 20% estimated violation rate for full-time employees with a 40% estimated violation rate for part-time employees. A 30% violation rate results in 1.5 missed meal periods per week. *Id*. at 6.

Defendants' revised amount for rest period premiums comprises two calculations. The first one is for putative class members who worked 30 hours or more for an estimated 10,861 workweeks, entitling this group to ten rest breaks per week. Opp'n 7 (citing 2d Holtzclaw Decl. ¶

---

[3] Specifically, Plaintiff does not dispute Defendants' calculation of $716,134.00 for unpaid minimum wages and liquidated damages and $906,150.00 for inaccurate wage statements and agrees that attorneys' fees should be calculated at 25% of the total amount in controversy. See Reply 7.

[4] Defendants state that they used the 18 hours threshold "in an effort to eliminate part-time employees who work lesser hours during the week." Opp'n 6 n.1.

8). Defendants use a 30% violation rate based on the same blend of a 20% estimated violation rate for full-time employees and a 40% estimated violation rate for part-time employees. Using an average regular rate of pay of $15.44 per hour and a 30% violation rate (amounting to three missed rest breaks per week), Defendants calculate $503,081.52 as the estimated amount in controversy for rest break violations for employees who worked at least 30 hours in a week. Opp'n 7. The second rest break calculation is for part-time workers and includes putative class members who worked at least 20 hours but less than 30 hours in a week, amounting to 6,871 workweeks. *See* 2d Holtzclaw Decl. ¶ 9. This group of employees was entitled to approximately five to eight rest breaks per week. Using a 30% violation rate (1.5 missed rest breaks per week) and the $15.44 hourly rate of pay, Defendants calculate the amount in controversy to be $159,132.36. Thus, Defendants posit a total of $662,213.88 for rest break violations. Opp'n 7.

Defendants assert that the use of a 30% violation rate for meal and rest breaks is appropriate given the allegations in the complaint "that Defendants engaged in a systematic pattern of wage and hour violations" under California law and that "Defendants systematically engaged in unlawful conduct . . . such as failing to pay all wages (minimum and overtime wages), failing to provide meal periods and rest breaks or compensation in lieu thereof . . ." Opp'n 4-5 (quoting Compl. ¶¶ 3, 101). They contend that this violation rate is conservative, citing cases finding it reasonable to apply a 50% violation rate based on similar allegations. *Id*. at 5-6 (citations omitted).

In response, Plaintiff argues that Defendants' revised estimates are "speculative and unsupported by evidence."[5] Reply 3. With respect to meal period violations, Plaintiff contends that it is unreasonable to base the amount in controversy on workweeks in which putative class members worked at least 18 hours because the entitlement to meal periods depends on the length of a shift not the number of hours worked in a workweek. *See* Cal. Code Regs. tit. 8, § 11070(11)

---

[5] Plaintiff also argues that the evidence on which Defendants rely "is problematic and inconsistent." Reply 3. He points out that in their notice of removal, Defendants alleged that the total number of workweeks in the class period was 31,406. Reply 3; *see* Notice of Removal ¶ 21; Holtzclaw Decl. ¶ 12. However, according to Holtzclaw's second declaration, the total number of workweeks is only 27,720. 2d Holtzclaw Decl. ¶¶ 11-15. Plaintiff correctly notes that Defendants do not explain this discrepancy.

1    ("[n]o employer shall employ any person for a work period of more than five (5) hours without a

2    meal period of not less than 30 minutes . . ."). Plaintiff offers the following illustrative example: if

3    a class member worked 18 hours in a single workweek, with each shift long enough to entitle the

4    individual to one meal period (i.e., over five hours), the class member could work a maximum of

5    three shifts that week. In that scenario, the rate of 1.5 meal period violations per week is actually a

6    50% violation rate, not a 30% rate. Reply 4. In other words, Plaintiff argues that Defendants'

7    method of calculation masks a significantly higher violation rate and is thus unreasonable.

8        As to the amount in controversy for missed rest periods, Defendants base their calculation

9    on the assumption of three hours of premium pay for three rest period violations per week for

10   putative class members who worked 30 hours or more per week, and 1.5 hours of premium pay for

11   1.5 violations per week for employees who worked more than 20 hours per week but less than 30.

12   *See* Opp'n 7. Plaintiff argues that Defendants' calculations are based on payment of an hour's

13   worth of pay for each missed rest period rather than per shift, which is a misapplication of Labor

14   Code section 226.7. Reply 4-5. Specifically, section 226.7 "permit[s] up to two premium

15   payments per workday—one for failure to provide one or more meal periods, and another for

16   failure to provide one or more rest periods." *United Parcel Serv. Wage & Hour Cases*, 196 Cal.

17   App. 4th 57, 69 (2011). In other words, an employee is entitled to only one premium payment per

18   workday for missed rest periods, regardless of how many rest periods they missed that day.

19   Therefore, Plaintiff contends, for an employee who works five shifts per week, three hours of

20   premium pay for three missed rest periods reflects a 60% violation rate (three shifts per week).

21   For an employee who works three shifts per week, 1.5 hours of premium pay for 1.5 missed rest

22   periods reflects a 50% violation rate (1.5 shifts per week).

23       Thus, Plaintiff asserts that Defendants' calculations are actually based on violation rates of

24   up to 50% and 60% for missed meal and rest periods, and Defendants have not supported those

25   high rates with evidence or citation to the allegations in the complaint. The court agrees. "Courts

26   in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for

27   purposes of CAFA amount in controversy calculations where the plaintiff does not specify the

28   frequency of the alleged missed meal or rest periods." *Chavez v. Pratt (Robert Mann Packaging),*

*LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (collecting cases). For example, in *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014), the court held that where "a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week." While Defendants claim their calculations are based on a 30% violation rate, as discussed above, the true estimated violation rates used in their calculations are far higher.

Moreover, Defendants offer no support for their violation rate assumptions for the meal and rest period claims even though they presumably are in possession of the relevant employment records. *See Koreisz v. On Q Fin., Inc.*, No. CV 18-8662-MWF (SSX), 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018) (noting that neither defendant's evidence nor the opposition to motion to remand "offers any reason 'grounded in real evidence' as to why a 50% violation rate is appropriate" (quoting *Ibarra*, 775 F.3d at 1198-99)). To be sure, "CAFA does not require [a] Defendant to comb through its records to identify and calculate the exact frequency of violations." *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) (quotation marks omitted) (finding a 20% violation rate for meal and rest breaks during the putative class period reasonable given allegations of a "pattern and practice" of such violations). However, Defendants offer no support for their conclusory assertion that their assumptions "are reasonable in light of Plaintiff's allegations and the evidence available at this stage in the proceedings." *See* Opp'n 7. *See also Toribio*, 2019 WL 4254935, at *3 ("what Aerospace cannot do is simply pull violation rates out of thin air, whether it characterizes them as 'conservative' or not, and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculation.").

Accordingly, the court finds that Defendants have not satisfied their burden of justifying the meal and rest period amount in controversy by a preponderance of the evidence.

### 2.  Waiting Time Penalties

Pursuant to California Labor Code section 203(a), "[i]f an employer willfully fails to pay .

9

. . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to 30 days. "Section 203 penalties for willful delays in the payment of end-of-employment wages are commonly referred to as 'waiting time penalties.'" *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 106 (2022). This provision "mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998).

Defendants assert that the amount in controversy for the waiting time penalties claim is $1,400,006.40. They contend that it is reasonable to assume that "each putative class member has allegedly not been paid minimum wage, overtime, and/or meal period or rest break premiums," and that it is accordingly reasonable to assume that each class member who was terminated during the period July 27, 2019 to July 27, 2022 is owed waiting time penalties. Opp'n 13. According to payroll records, 394 non-exempt employees were terminated during that period and their average hourly rate of pay was $15.44. Holtzclaw Decl. ¶ 13. Defendants calculate the $1,400,006.40 total as follows: 394 employees x $15.44/hour x 8 hours per day x 30 days. Opp'n 13.

The problem with Defendants' calculation is that it is based on the flawed assumption that each terminated employee is entitled to waiting time penalties of eight hours of pay per day for 30 days. When calculating waiting time penalties, "[t]he 'critical computation' is 'the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days." *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018-19 (N.D. Cal. 2010) (quoting *Mamika*, 68 Cal. App. 4th at 493). Defendants identify thousands of workweeks during the class period in which employees worked less than thirty hours. This strongly indicates that many employees worked shifts of less than eight hours, a fact not reflected in Defendants' daily wage rate calculation. *See* 2d Holtzclaw Decl. ¶¶ 7, 9. Defendants offer no evidence for their underlying assumption that every one of the 394 terminated employees worked eight hours a day. Accordingly, Defendants have not satisfied their burden of justifying the amount in controversy for the waiting time penalties claim by a preponderance of the evidence.

\* \* \* \* \*

In sum, Defendants have not supported their estimates of the amounts in controversy pertaining to the meal period and rest break claims or the waiting time penalties claim. Moreover, the parties agree that the amount in controversy for attorneys' fees is 25% of the overall claimed amount in controversy. Therefore, Defendants have established only the following amounts: unpaid minimum wages and liquidated damages of $716,134.00 and wage statement penalties of $906,150.00, for a total of $1,622,284. An award of attorneys' fees equivalent to 25% of the supported amount in controversy (25% of $1,622,284) equals $405,571.00, for a total supported amount in controversy of $2,027,855.00, which is far short of the $5,000,000 threshold required by CAFA.[6]

As Defendants have failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, the court lacks jurisdiction over this case under CAFA. Plaintiff's motion to remand is granted.

### III. MOTION TO DISMISS

As the court lacks jurisdiction over this case, Defendants' motion to dismiss the complaint is denied as moot.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is granted. Defendants' motion to dismiss is denied as moot. This case is remanded to San Mateo County Superior Court.

**IT IS SO ORDERED.**

Dated: December 9, 2022



Donna M. Ryu
United States Magistrate Judge

---

[6] Using Plaintiff's projection of one meal period and one rest period violation per workweek, applied to Defendants' remaining assumptions, Plaintiff's estimated amount in controversy for meal and rest period violations is $758,690.72 ($273,782.08 + $484,908.64). Plaintiff's estimated amount for waiting time penalties is $1,003,754.40, for a total amount in controversy of $4,230,910.90. Opp'n 7.